*Seeking "CLASS-ACTION CERTIFICATION"*

"MADDI" Jeffrey Aaron Moore #337243
Name and Prisoner/Booking Number

ASPC-Kingman / Huachuca Unit
Place of Confinement

P.O. Box 6639
Mailing Address

Kingman AZ 86402
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

FILED ___ LODGED ___
RECEIVED ___ COPY ___

NOV 3 0 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

"MADDI" Jeffrey Aaron Moore, et al,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Mark Brnovich, et. al ,
(Full Name of Defendant)

(2) William Barr ,

(3) David Shinn ,

(4) The GEO Group, Inc ,

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE   LRCiv P 5.4
             (Rule Number/Section)

CASE NO. CV20-08318-PCT-DLR--MTM
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☒ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☒ Other: U.N. Standard Minimum Rules for the Treatment of Prisoners (12/17/2005)
   *Nelson Mandela Rules*
2. Institution/city where violation occurred: ASPC-Kingman / Huachuca Unit, Arizona.

## B. DEFENDANTS

1. Name of first Defendant: __Mark Brnovich__. The first Defendant is employed as: __Attorney General__ at __State of Arizona__.
   (Position and Title)                        (Institution)

2. Name of second Defendant: __William Barr__. The second Defendant is employed as: __Attorney General__ at __United States__.
   (Position and Title)                        (Institution)

3. Name of third Defendant: __David Shinn__. The third Defendant is employed as: __Director__ at __ADCRR__.
   (Position and Title)                        (Institution)

4. Name of fourth Defendant: __The GEO Group, Inc__. The fourth Defendant is employed as: __Private Prison__ at __Contracted by ADCRR__.
   (Position and Title)                        (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☑ Yes   ☐ No

2. If yes, how many lawsuits have you filed? __40+__. Describe the previous lawsuits:
   __Refer to PACER__
   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## D. CAUSE OF ACTION

\* <u>The Non-Delegation Doctrine - Schechter v. U.S. (1935)</u> \*

### COUNT I

1. State the constitutional or other federal civil right that was violated: 13th/14th Amendments --- Federal Activities Inventory Reform (FAIR) Act of 1998., UN Rules by Treaty

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Due process

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   I am 1 in over 7000 ADCRR inmates who defendant David Shinn has unlawfully moved to a private prison facility - run by corporate defendant, The GEO Group, Inc. The movement toward utilizing private facilities to help manage the crisis brought on by mass incarceration, has become so pervasive that one judge recently said that "[we] are in an era of privatization." Moore v. Gaither, 767 A.2d 278, 281 (D.C. 2001) For far too long, the private prison industry has relied on two arguments - both of which have been proven false:
   1) Private Prisons are safer than public prisons. Research conducted by the DOJ found on the whole, of all major violations (assaults, riots, fires, ect.) in private facilities, there were 50.5 violations per 1,000 inmates compared to 42.3 violations in their public counterparts.
   2) Private prisons are more cost effective. (Refer to Alex Friedman, Apples-to-Fish: Public And Private Cost Comparisons,

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Threats/physical assault from staff and inmates. Total deliberate indifference to my medical needs. I am in deep pain both Physically and mentally and in fear for my life.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☐ Yes  ☒ No
   b. Did you submit a request for administrative relief on Count I?  ☐ Yes  ☒ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☐ Yes  ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Not a "conditions of confinement" cause --- this is a Constitutional question the Court must resolve.

3

42 FORDHAM URB. L.J. 503 (2014)). This violates the mandate provided by A.R.S. § 41-1609 which forbids the state to enter a contract with a private facility, when the state could perform the same task at a lower cost. The allegations raised in this 3-count class-action complaint have EVERYTHING to do with Defendant Shinn improperly delegating government duties to Defendant The GEO Group, Inc. As a result my health and safety have been irreparable harmed — perhaps fatally. GEO has insufficient guidance and oversight from the state. GEO has complete control over the "life or death" aspect of my medical care. If I am dis-satisfied with the treatment, I can pursue a 2-step remedy per DI 287, 802.02, 802.05: 1) submit an informal to the Director of Nursing, followed by, 2) file a formal with GEO's "Health Administrator" --- No government actor is involved.

A non-medical grievance is much more difficult to navigate: "Step 1" involves talking to the responsible staff and then submitting an 802-11 to the CO3. "Step 2" is to file an 802-1 with the Warden (Note: if an inmate has been labelled a "vexatious grievant" — she must file form 802-13 to request permission to file a grievance — if denied, that is exhaustion. Again NO state actor involved at the private facilities.) "Step 3", form 802-3, permits an Appeal, for a Non-vexatious grievant, to be reviewed by Defendant Shinn. However, by

this point, up to 120 days have lapsed since the original incident and most inmates are so EXHAUSTED by the exhaustion requirement that they simply "give-up". ADCRR offers no resources to assist inmates with the grievance process.

Another example of Defendant Shinn's lack of oversight is in the Disciplinary Process. The Hearing Officer's are high-ranking ADCRR staff (Cpt./Lt). They are on site once per week. The non-confidential interaction is very brief/rushed (15-20 minutes for a group of 10 inmates) The "ticket" is read, the finding of guilt is certain, and then a sentence is imposed. The inmate cannot enter a plea, submit evidence or testimony, or even confront her accuser. ADCRR also retains "control" over classification. The yard I am on is a Level 3 - but there are over 1,400 inmates housed here. The decision of what bed to assign that inmate is left up to Ms. Tyler (a GEO employee) Ms. Tyler makes these assignments absent any information and it is rarely challengable by the inmate who must wait 6-months in order to put in a request to move. A bed assignment can have significant long term ramifications, but no personality/psychological assessments are performed. It is more of a lottery as to where an inmate will be placed. The Court's concern should not be with errors in judgment but with the absence

of guidelines and the resulting failure to make an informed cellmate decision.

A final lack of oversight comes by way of Defendant Shinn assigning ADCRR "Monitors" to the Unit. The visits by these "Monitors" are infrequent. They do not include talks or surveys with inmates. The government has moral, legal, and political obligations to inmates. This was the rationale used by the Israeli Supreme Court to strike down the use of private prisons (holding that the transfer of power by the State to a private corporation would undermine the legitimacy and moral basis of law enforcement and sentencing, and authority over inmates) It is not surprising that Defendant William Barr directed the BOP to reduce and ultimately end the use of privately operated prisons. Defendant Barr failed to make this common-sense and lawful decree applicable to ADCRR. Weighing all the arguments over the use of private prisons, the American Bar Association in its Standards on the Treatment of Prisoners, takes the position that government use of private prisons should be "disfavored", section 23-10.5(a) 2010. The Court will note the inhuman treatment of prisoners housed at private facilities with ADCRR as it reviews Counts 2/3.

## COUNT II

1. State the constitutional or other federal civil right that was violated: [4th, 5th, 14th, 6th, 8th] Amendments – 18 U.S.C. §241 (criminal civil rights violations) Nelson Mandela rules (U.N.)

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   ☐ Basic necessities        ☐ Mail              ☐ Access to the court    ☐ Medical care
   ☐ Disciplinary proceedings ☐ Property          ☐ Exercise of religion   ☐ Retaliation
   ☐ Excessive force by an officer  ☑ Threat to safety  ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

The "NOVEL" approach behind this action rests in the possibility that one inmate, or a group of similarary situated, can be singled out by two or more prison staff, with the intent "to injure, oppress, threaten, or intimidate" said inmate in the "free excercise of [her] rights". The concept deviates significantly from "The Totality of the Conditions Theory", in many ways, to wit:
1) It is individual as opposed to a large scale litigation
2) "Totality" are a combination of conditions which combine to produce a deprivation of a single identifiable human need. See Wilson v. Seiter — then note that all needs are rights but not all rights are needs. A prison can exceed all the standards of care on a superficial level — but still face 8th Amendment liability, if that care is not spread equally or is deprived by culpable state actors
3) "Excessive force" is NOT limited to physical actions but can encompass extreme psychological torture. See Hudson v. McMillian. By necessity the proper state of mind is "malicious" as opposed to the "deliberate indifference" standard.
4) Imminent injury is inherent – invoking the 3-strikes exception
5) The claim for damages survives a transfer, release, or even stopping the action or curing the deficiency.
6) The allegations are both civil and criminal, please read ---

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Severe/debilitating back/neck pain. Subject to multiple Assaults/PREA violations, psychological damage

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count II?  ☑ Yes  ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?  ☑ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## COUNT II

1) Chapter 13 - CIVIL RIGHTS. 18 U.S.C. §241 (Conspiracy against rights) Amendments 1, 4, 5, 8, 14, 6, and applicable laws of the United States; i.e., ADA, PREA, Assault, Retaliation, and the Hate crime acts §249.

2) Threat to safety

3) FACTS: The below listed incidents are not in chronological order nor are they exhaustive. The intent is to demonstrate a pattern of systemic behavior on the part of private prison staff to enter into a conspiracy "to injure, oppress, threaten, or intimidate [Plaintiff-an ADCRR inmate] in the free exercise or enjoyment of any right or privilege secured to [her] by the Constitution or laws of the United States,..."

In September 2020, I was approached by officer Ruyg. He told me that ever since Doug had passed away, that I was the person to ask for "legal help". He said he was in financial difficulty and wanted to exploit a motor vehicle crash on September 5, 2020 for financial gain. It was a hit and run involving a commercial truck, but he was able to get the license plate number. The police were dispatched and took a report.

Ruyg said if I helped him that "[he] would take care of [me]". I told him I needed to think about it but told him that if he is injured he should seek

medical attention, and that was a major factor in a final settlement. I told him insurance companies find physical therapist more credible than chiropractors, a prescription to opiods would demonstrate "severe pain" (and if he didn't need them, he could easily sell them). I told him it was essential to get an MRI to record any damage to muscles/nerves etc. (plus they were expensive)

Later that day, Inmates Legg, Taylor, and myself were in the bunk area when Ruyg came by with a sealed bag. He said, "this was in property and it has your name on it." It contained random items like playing cards, nice pens (the kind you can only get outside) candy, etc. We all laughed and I thought that was the end of it.

A couple days later Ruyg approached me again, with an entirely different demeanor. He was aggressive and stated "I know we've had our differences in the past, but 'Man to Man' I need your help. You know I can take care of you."

I was VERY scared. Ruyg is tall and athletic. His anger is explosive. Rumor is that he was transferred from Cerbat due to multiple physical altercations with inmates. One of the "Red Cards" told me that Ruyg is "unstable."

FLASH-
BACK

[Our "differences in the past" included a July 27, 2020 assault. While standing outside the chow-hall awaiting breakfast, Ruyg stormed over to my group and grabbed the water bottle from my back pocket exclaiming, "You don't need this - it's contraband!" The inmates around me heckled him with comments like, "trying to earn your stripes?--- Go for the bars, 'Super Cop'!" He got really pissed off and because I was the most vulnerable one in the group, he took it out on me. We started yelling at each other (it was a huge scene). He grabbed my lanyard ID (break-away) and ripped it from my neck. I told him I needed my ID to eat. He inferred I was fat and told me to "Get the fuck back to your house!" I had to miss breakfast that day --- so I filed a complaint. It wasn't until almost 11:00 am that Supervisor CPS IV Cole had to go and physically get my ID from him. Later that day "Michigan" told me to watch out for Ruyg who had pulled him off to the side and said, "Now Moore's gonna see the real me!" "Michigan" said he had my back and would testify to this.

I freaked out and told Case Managers Fleming and Bonacci that I needed to be

moved off the yard right then. They called Sgt. Hawthorne, who told me she has known Ruyg for a long time and she believes her temper is even worse than his. Not a day goes by that she doesn't want to "punch someone in the face." When asked what I wanted done, I simply said, "tell him to keep his hands off me!" She said she would not do that — so I told her to "MOVE ME OFF THE YARD!"

Sgt. Hawthorne took me to Lt. Fisher, whom I explained the situation to. Lt. Fisher said not to worry because Ruyg is "all bark and no bite" and that "he threatens everyone." I reiterated my urgent desire to be moved to a safe place. He said that CDU was being reserved for COVID-19 quarentine and because the numbers were so low he couldn't afford to move me stating "we need to keep the lights on." I asked, "And what's going to happen when Ruyg beats me up?" Lt. Fisher said, "I have ways of dealing with that," followed by "you're safe here" and told me to "drop the issue".

Lt. Fisher is a "rough man" — kinda "old-school" who has this psychotic look in his eyes. I felt intimidated by him so I never pursued the complaint against Ruyg to exhaustion ] END OF FLASH-BACK

So began the <u>short</u> criminal relationship with Ruyg. I asked around which accident lawyers had the lowest contingency fee and made reccomendations, found out providers he could seek out with possible treatments, told him that his wife may have a claim under loss of consortium, stressed the psychological/emotional side of his injury ect... In return the small gifts continued and he would let me pass through the gate without a search from the cafeteria. Other inmates had me bring back all kinds of stuff. Way too many people were finding out about this "arrangement". I became very, very uncomfortable and wrote a letter to the F.B.I towards the end of September. My belief is that the letter was intercepted by prison staff. On Oct. 4, 2020, my friend Ken Falcone (in his 70's) were trying to walk a couple laps when Officer O'Malley called us over to where he and about a dozen inmates were standing. He told me to get on his good side I needed to give him the name of an inmate who had caused some trouble for O'Malley at breakfast. I immediately started cussing him out, "I don't work here" etc... "I'm not a fucking rat!" That's when he said, "THAT'S NOT WHAT I HEAR!" I knew this was a "green light" issued by staff - so I had to act

quickly. Weighing the options, I concluded it would be better to pick up an "assault" on staff charge rather than get "stuck" by another inmate. I rushed O'Malley to tackle him but Ken pulled me back. The group of inmates told Ken, "get Moore outta here". Ken and I finished one lap and then went to talk to the group who had just witnessed the incident. They were all white so we had to go talk to the "Head" about the situation. He didn't think it would be a problem because "everyone knows the type of person O'Malley is". Some of the other races were a little suspicious about why O'Malley would call me a "Snitch" Bobby Chun had heard a group was coming after me and to be alert and safe.

A few months ago I had mistakenly used a Case Managers first name on an official form. She was extremely upset and instructed an STG inmate to "slap the shit out of [me]" The beatings continued daily so I finally filed for an injunction with this Court on 7/20/20 (CV-20-08180-PCT-DLR (MTM)) I got really scared so I filed a Voluntary Dismissal on 9/8/20. I would like to bring that issue back up (please refer to it - and give leave to Amend --- I just don't want this complaint to exceed the maximum allowed pages) Also Complaint # CV-20-08137-PCT-DLR (MTM), which details a verbal

assault where a guard called me a "fucking tranny" in the middle of our dorm. Then a Captain threatened me when I filed a complaint.
Prison officials will not issue ALL my female clothing because they say I am "Unisex" (whatever that means - but I have it in writing from 2 seperate officials) They have provided 2 panties and 2 sports Bras. Female inmates are supposed to get 7 panties, 3 Bras, 4 Sports Bras, 2 Pajamas, and 1 Robe. We have to walk to the shower in our undergarments. Because I don't have a robe, I have to put up with degrading comments. Also, the boys can sleep in their boxers, but I have to wear a full uniform because I don't have PJ's. This violates the PREA STANDARDS. There is quite a bit more ---
I have multiple witnesses and a "paper-trail" stretching back over a year. I have been interviewed twice by police and they advised the case would be forwarded to the Prosecutor's office - but I have not heard back in several weeks (the police officer is part of ADCRR - Investigations Bureau) I have also spoken to an investigator from the GEO corporation about the staff misconduct. Other unconstitutional conduct includes the librarian making me and a group of co-plaintiff's rip up a suit to have smoking banned at the ADCRR. She threatened us with "I've seen people beat down for a lot

less --- you wont be safe anywhere in the state." The chaplain would not let me worship with the Messianic Jews or provide a Kosher diet until my life conformed with the teachings of the New Testament. I have many more incidents of name calling, verbal assaults, sexual harrassment and minor assaults like pushing me (with no injuries)

The inadequate treatment by medical is also documented in the two previously mentioned complaints. Medical will not provide for a necessary surgery where pre-existing injuries were exacerbated by a fall off the top bunk resulting in massive bruising. Medical discontinued on its formulary Gamapentin and Tramadol which were used to treat severe pain and has not substituted it with anything. Then they discontinued my pain relievers Mobic and Naproxen and my prescription for orthopedic shoes. They will not send me back to the P.T. or provide Heat Therapy / TENS. I can't get a back brace or trade my cane for a walker. I am subject to frequent falls that are painful. I have been nicknamed "Man-Down". The main issue is that I can't get any gender-affirming health care; ie, supportive counseling, Hormone Therapy (they say I'm on the list but it have been 15 months) or SRS (because of a blanket policy). I have been called "vexatious" by medical - now its difficult to be scheduled at all - for anything. This is all because I am transgender and it hurts!!!

## COUNT III

1. State the constitutional or other federal civil right that was violated: 1st, 14th, 8th Amendments UN (Nelson Mandela Rules)

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   ☐ Basic necessities      ☐ Mail              ☐ Access to the court   ☐ Medical care
   ☐ Disciplinary proceedings ☐ Property         ☐ Exercise of religion  ☐ Retaliation
   ☐ Excessive force by an officer ☐ Threat to safety ☒ Other: Administrative Segregation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   I was placed in Administrative Segregation on 10/23/20 and continued through the present on an indefinite status. The international consensus is that any period of isolation in excess of 14-days is considered "Prolonged". At the Huachuca Unit, the CDU houses ALL segregated inmates, irrespective of the reason for isolation. It could be new arrivals, discipline, medical, PC, LGBT, quarentine, overcrowding, STG investigations ect... The conditions for ALL groups in the CDU are identical. 24-hour lockdown (every other day inmates provided 2-hours for recreation - in a small cage with no equipment. Sundays are excluded because they are "Non-Movement" Days) Inmates get one 10 minute phone call per week, 3 showers, no access to "COVID Soap", severely restricted commissary, no access to newspapers, no "routine" dental services, no tele-psych appointments with my psychologist or psychiatrist. As an indigent inmate they will not provide me with a loaner

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Extreme pyschological torture resulting in physical symptoms like body aches, stomach cramps, tight chest/difficulty breathing, migrains ect...

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count III?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

5

T.V., so I have no way to stay informed as to current events. I also miss the weekly broadcast by the Warden, so I do not know what is going on at the prison (nor are we provided a summary of what happens at the "Town Halls") Also, without a T.V. I can't watch religious sermons --- neither am I permitted to go to church on Sundays or religious fellowships/study, which I did all the time while in GP. It is very difficult to stay close to God without this contact. The T.V. also helped me to exercise. I have been ordered by the P.T. to do "Home Exercises." My friend, Bill and I were doing this with the aid of a yoga broadcast --- but now I don't have anything and the condition of my injury is worsening. The prison will also not provide a cup, because the cell is outfitted with a drinking fountain. But without the cup, I can't drink my "Cool-up" which is a significant part of my prescribed diet. It includes 100% DV of Vitamin C, D, Calcium, and Zinc. Without these essentials, I have been getting cold/flu symptoms and have had to be placed on medicine. Also without the cup I can't take a fiber supplement mix to relieve the symptoms of constipation. The Doctor said to try to exercise more to help with constipation but it is difficult to do that in CDU. I am not allowed my cain in the cell so I am prone to frequent and painful falls.

The mattresses are the "throw-away" ones - which exacerbate my pre-existing back injuries and make sleeping nearly impossible. When I asked the doctor for a double mattress he said "NO - CDU is supposed to suck to keep inmates from wanting to go there." The cell is always frigid and I am not provided adequate clothing nor a pillow - like in GP. Every time I leave the cell I have to be handcuffed behind my back (they will not provide a medical exception for the front so I can use my cane - plus it hurts in the back) The sanitation is unfit for habitation. My toilet would not flush for a whole week before they finally moved me - and now I am NOT in a handicapped cell. I have zero access to any programming. I read in case law that Administrative Segregation inmates should be treated like and afforded all the priviliges as the GP inmates --- but that is definitely NOT happening here. When New Mexico reformed Solitary to exclude "Admin-Seg" they reduced its population in SHU by 50% in just one year!

## E. REQUEST FOR RELIEF

State the relief you are seeking:
Compensatory and punitive damages. Certification as a "class" and appointment of Counsel. Issuance of a Preliminary injunction/ TRO (attached). A jury trial on all triable issues. All costs associated with this suit. Any other relief this Honorable Court deems just, fair, and equittable

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  11/25/20
             DATE                                    SIGNATURE OF PLAINTIFF

_____N/A_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)


_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6